Philip Handrich, Jr., Appellant, v. Helen Handrich, Appellee.

Term No. 49M13.

Opinion filed October 18, 1949. Rehearing denied December 23, 1949. Released for publication December 23, 1949.

RUSSELL H. CLASSEN, of Belleville, for appellant.

TURNER, HOLDER & ACKERMANN, of Belleville, for appellee.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

This is an appeal from the order of a chancellor making certain revisions in the matter of the care, custody and control of Rose Marie Handrich, the seven-year-old daughter and only child of the former union of these parties. The order was entered after hearing upon the petition of the father, Philip Handrich, Jr., hereafter called petitioner, and the answer of the mother, Helen Handrich, hereafter called respondent.

The original decree in the case was entered in February of 1947, it granted a divorce to respondent on a counterclaim, and awarded custody of the child to respondent for nine months each year during school, and to petitioner during June, July and August. There ensued a period of relative quiet, until the spring of the following year, 1948, when the mother, apparently reluctant to give up the child, filed her petition for modification, asking complete custody. This was resisted by the present petitioner, and the chancellor who heard the case declined to make any changes, leaving the original decree in effect, so that the present petitioner had custody of the child during the summer. He in turn was reluctant to give up the child, and filed his petition September 1, 1948, which resulted in the order now on review.

Petitioner claimed, and introduced evidence to show, that the child had been neglected and mistreated while in custody of respondent, had missed 35 days of school, had been examined by a physician at the end of the term, who testified the child was suffering from malnutrition, also a bad chest condition which he called pneumonitis, also had fever, anemia, intestinal flu, head lice, plus poor behavior and bad deportment, which he thought was the result of inadequate parental discipline. Other testimony tended to show the child received good care and thrived when at petitioner's home.

Respondent claims that petitioner's medical witness was highly prejudiced and unreliable, and produced a physician in her behalf who testified he had examined the child in May, which was the month before the end of school, and found nothing wrong with her at that time, and she was not suffering from malnutrition. Respondent testified in her own behalf, as did her ·sister and father with whom she resides, also her brother, who lives next door, and other women who had visited in the home. All testified that the mother gave the child good care, that the little girl was clean, healthy and contented. There has been one period during the winter, when the child had measles, and the illness lingered, so that she missed about a month of school. A prolonged dispute arose over this, which even continued after the order was entered, in the form of petition for rehearing, affidavits and counter measures.

The child testified on both hearings. In May she said she was not well treated at her father's and did not wish to leave her mother. In September she said she was well treated at her father's and wished to stay, she likes her Daddy but did not like her mother.

■ ■ The foregoing does not include all the minutiae of evidence, but will be sufficient to indicate the conflicting nature of the testimony. The chancellor who saw and heard the witnesses is in a much better position than this court to determine their sincerity and credibility. *Durbin v. Durbin,* 315 Ill. App. 238. It has been repeatedly held that the credibility of witnesses and the weight to be accorded their testimony are questions for the chancellor, and the Appellate Court will not disturb his findings, where the evidence is sharply conflicting. *Woolf v. Woolf,* 328 Ill. App. 319; *Neal v. Neal,* 328 Ill. App. 314; *Podgornik v. Podgornik,* 392 Ill. 124.

██ We do not assume that the chancellor rejected or disbelieved all of petitioner's testimony. But the petitioner was seeking to deprive a mother of custody of a small child, a girl, upon the ground the mother was no longer a fit and proper person to have such custody. The court's decision is to the contrary, and in view of the conflict in the evidence on that question, we cannot say the finding is contrary to the weight of the evidence.

The order appealed from discontinued the long periods of uninterrupted custody, alternating between the two parents; in lieu thereof custody is placed largely in the mother, but petitioner is given the right to take the child for week ends, every other week during school, and for two separate periods of two weeks each during the summer. In addition to claiming the court's findings were against the weight of the evidence, several points of law are raised which we now consider.

██ ██ Error is assigned upon the ruling of the court excluding certain evidence, offered by petitioner, to show that prior to the order entered in May, respondent had temporarily worked in a tavern, at hours which precluded her giving proper care to the child. While the scope of the present inquiry was not limited by law to any particular period of time, yet the court cannot sit in review on the former decision, and the chancellor properly declined to do so. The case of *Thomas v. Thomas*, 233 Ill. App. 488, is not in point. Here it is not claimed that this was a continuing condition, which could affect the present decision had it continued to exist, the ruling of the court did not exclude testimony to that effect.

██ Error is also assigned on the ground the order does not conform to the prayer for relief of either party, and that it is more favorable to respondent than her request. The point is without merit. When the

court was asked to inquire again into the question of custody, and did so, the principal duty of the chancellor was to consider the best interests of the child, as it might appear from the evidence, and to enter a proper order based on the relevant testimony, as changed conditions might justify. His discretion cannot be confined to limits set up in the parents' pleadings; it made no difference what the respondent asked for, or whether she asked for anything. This principle is based upon the broad statutory powers of the court, which are effective as an incident to divorce proceedings originally, also upon application to modify thereafter. When these powers are called into action by a complaint, or petition to modify, they cannot be delimited by any device of pleading. *Thomas v. Thomas*, 250 Ill. 354; *Craig v. Craig*, 163 Ill. 176; 17 Am. Jur. "Divorce," § 674.

It is next contended that the order was improper because not based upon a change of conditions "favorable to defendant." We understand by this that petitioner still contends there has been a change in conditions, but they are such as would only justify an order in his favor, and do not support any award so favorable to respondent as this. The solution of this question depends upon the factual findings, and therefore must be left to the chancellor unless it appears that there has been no change of circumstances, so that no change in the order can be justified.

We will refer to some obvious deductions from the evidence: this child displays some of the symptoms typical of the product of a broken home. The natural scope of her affections has been violently disturbed. She was made the center of a tug-of-war, and compelled to transfer her loyalty and affection first one way and then another. The resulting vacillation and insecurity was, of necessity, deleterious to her char-

acter and health; "poor behavior" and "bad deportment" being almost inevitable.

Next, we observe from the record that petitioner pays only $7 per week toward his daughter's support, but criticizes the mother for securing part-time employment, so that the child was at times left in the care of someone else. Twice the child has been in court, both times the father attacked the character of the respondent, and on the last hearing, made every effort to describe her as an unfit mother. The chancellor finds this is not true. The pronounced change in the child's attitude toward her mother, which occurred during the short period of less than three months, while she was at her father's home, is highly significant.

When respondent originally secured a divorce, and was found to be a fit person, the award to her of the custody of a small child, especially a girl, was normal and according to the usual custom. The permission for a three-month visit with the father every summer, might have worked out satisfactorily, if every effort had been made to conceal the old jealousies and animosity which divided the parents. Obviously, such was not the case. This warring over the child and the disturbance of her natural affections are likely to have a permanent bad effect upon her. The situation which has developed justifies some change in the custody order, not for the purpose of ruling for or against either parent, but simply for the best interests of the child.

██ In view of the finding, based upon sufficient evidence, that the mother is still a fit person, the court could not properly take the child from her, hence any change to improve the situation would likely increase her control. Petitioner is also found a fit person, and the court evidently believed he has a real affection for the child, and endeavored to preserve it by allowing

reasonable visitation periods. The balancing of the various considerations, and thereby fixing the type and extent of these periods is a difficult problem, especially in the absence of any co-operation from the parents. In this type of case, it is inevitable that a broad discretion must be allowed to the chancellor. *Kent v. Kent*, 315 Ill. App. 284; *Serotzke v. Serotzke*, 335 Ill. App. 485.

We find no abuse of discretion, the findings and order are within the scope of the evidence, and there are no errors of law to justify a reversal, therefore the order is affirmed.

*Order affirmed.*

BARDENS, P. J., and CULBERTSON, J., concur.